1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM INC et al.,

                    Plaintiffs,

        v.

OLEKSIJ PARKHOMENKO et al.,

                    Defendants.

CASE NO. C21-1283-KKE

ORDER GRANTING MOTION FOR
DEFAULT JUDGMENT AND
PERMANENT INJUNCTION

 

Plaintiffs Amazon.com, Inc. ("Amazon") and Kirby Opc, LLC ("Kirby") sue Defendants for distributing and selling counterfeit Kirby vacuum bags on Amazon's online storefront. Dkt. No. 18. Plaintiffs now move for default judgment and permanent injunction against Defendants Pavel Shauchenka, Amasales LLC ("Amasales"), Bauble Whsale LLC ("Bauble"), Aleksey Parkhomenko, Iryna Shkarupa, Oleh Shkarupa, Vlad Sandrak, and Kiryl Zhukau (collectively, "Defendants"). Dkt. No. 47.

Having reviewed Plaintiffs' motion and the relevant record, the Court grants Plaintiffs' motion for default judgment and permanent injunction. Dkt. No. 47.

# I.     BACKGROUND

**A.     Factual Allegations**

## 1.     The Parties

Kirby is a Delaware limited liability company that produces home cleaning products.  Dkt. No. 18 at 3, 11–12.  Its principal place of business is in Chicago, Illinois.  *Id.* at 3.  Kirby owns the registered trademarks for more than 20 brands, including for its Kirby-branded vacuum bags.  *Id.* at 12–13, Dkt. No. 18-1.  Amazon is a Delaware corporation with its principal place of business in Seattle, Washington.  Dkt. No. 18 at 3.

The complaint classifies Defendants into two groups: the Trafficker Defendants[1] and the Facilitator Defendants.[2]  Dkt. No. 18 at 3–7.  Plaintiffs allege that the Trafficker Defendants are "the individuals who operated, controlled, and/or were responsible for" the Amazon selling accounts used for improperly advertising, marketing, and selling the counterfeit products.  *Id.* at 3–5.  Plaintiffs also allege that the Facilitator Defendants are the individuals who "owned, operated, or maintained the Facilitator Businesses" or the underlying businesses used to participate in the production and sale of the counterfeit products.  *Id.* at 5–7.  Plaintiffs also claim that the Facilitator Defendants assisted in the sale of counterfeit products by providing fake documentation designed to circumvent Amazon's product authentication requirements.  *Id.* at 2.

## 2.     The Amazon Storefront

Amazon operates an online storefront, in which it directly sells its own inventory of products to consumers, and also allows third parties to register as sellers.  Dkt. No. 18 at 3.  To operate as a seller in the Amazon Store, all third-party sellers must agree to Amazon's Business

---

[1] "Trafficker Defendants" collectively refers to Defendants Parkhomenko, I. Shkarupa, O. Shkarupa, Sandrak, and Zhukau.  Dkt. No. 18 at 3–5.

[2] "Facilitator Defendants" collectively refers to Defendants Amasales, Bauble, Shauchenka, Hapantsou, and Does 1-10.  Dkt. No. 18 at 5–7.

Solutions Agreement ("BSA"). *Id.* Before or after a seller lists a product, Amazon may require documentation to prove a valid supply chain exists. *Id.* Such documentation can include product photographs, supplier invoices, or certificates of authenticity. *Id.* Amazon prohibits the sale of inauthentic or fraudulent products. *Id.* at 9. Under the BSA and Amazon's Anti-Counterfeiting Policy, third-party sellers are barred from selling counterfeit goods or products otherwise "not legal for sale, such as products that have been illegally replicated, reproduced, or manufactured[.]" Dkt. No. 18 at 14, Dkt. No. 18-3. By agreeing to the BSA, sellers also agree that the information and documentation they provide to Amazon in connection to their selling accounts is accurate and valid. Dkt. No. 18 at 16. Authentication documents may include certificates of analysis, supplier invoices, and product images. Dkt. No. 49 at 3.

To assist rights owners in monitoring and reporting potential infringement, Amazon launched Brand Registry. Dkt. No. 18 at 10. Brand Registry uses machine learning to predict infringement. *Id.* Brand Registry participants may use the tool to search for and report potentially infringing products. *Id.* Kirby is enrolled in Brand Registry and uses the service to monitor and report products potentially infringing its trademarks. *Id.* at 13.

3. <u>Defendants' Selling Accounts</u>

Plaintiffs allege that the Trafficker Defendants fraudulently created selling accounts, which offered, distributed, and sold counterfeit Kirby-branded vacuum bags on the Amazon storefront. Dkt. No. 18 at 16. Kirby reviewed physical samples of the Kirby-branded products and concluded that these products are counterfeit. *Id.* at 17. Plaintiffs contend that the Trafficker Defendants coordinated with the Facilitator Defendants to submit falsified invoices and documents to Amazon that purported to show that their counterfeit products came from an authentic supplier. *Id.* at 17, 21. Amazon used an external vendor to place a test order for Facilitator Defendants' services and confirmed that Facilitator Defendants used a certain email to access the vendor's selling account

and submit fake authentication documents on the vendor's behalf.  *Id.* at 22.  Certain Trafficker Defendants used inventory removal services[3] operated by the Facilitator Defendants.  *Id.* at 17.  Plaintiffs allege that Defendants' scheme diverted legitimate sales from Kirby, and harmed both Plaintiffs' brand reputation and customer goodwill.  Dkt. No. 50 at 4.

**B.  Procedural Background**

Plaintiffs initiated this action on September 21, 2021.  Dkt. No. 1.  They amended the complaint on February 16, 2024.  Dkt. No. 18.  Plaintiffs properly served Defendants Hapantsou, Bauble, and Amasales.  Dkt. Nos. 23 (showing service executed on Defendant Hapantsou on March 9, 2024), 24 (showing service on Bauble on March 1, 2024), 27 (showing service executed on Amasales on March 4, 2024).  The Court granted Plaintiffs' request to serve the remaining Defendants via email service.  Dkt. No. 37.  Plaintiffs executed service on these Defendants on October 24, 2024.  Dkt. No. 38.

Plaintiffs moved for entry of default against all Defendants except for Defendant Hapantsou on March 17, 2025.  Dkt. No. 41.  The clerk entered default against these Defendants on March 27, 2025.  Dkt. No. 43.  Plaintiffs then settled with Defendant Hapantsou (Dkt. No. 46), and moved for default judgment against the other Defendants.  Dkt. No. 47.  Defendant Hapantsou was dismissed from this case on April 24, 2025.  Dkt. No. 51.  The other Defendants have not appeared in this case.

## II.   DEFAULT JUDGMENT STANDARD

While courts generally prefer to decide cases "upon their merits whenever reasonably possible[,]" the court has discretion to grant default judgment.  *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).  At the default judgment stage, the court "takes the well-pleaded factual

---

[3] When sellers store items at Amazon's fulfillment centers pending sale, sellers have the option to remove or return these items to a chosen location.  Dkt. No. 49 at 4 n.3.

allegations in the complaint[,]" except for those related to damages, "as true." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quoting *Cripps v. Life Ins. Co. of N. Am*., 980 F.2d 1261, 1267 (9th Cir. 1992)) (cleaned up); *see also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps*, 980 F.2d at 1267. When considering whether to exercise discretion in entering default judgments, courts may consider a variety of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of a plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72. This District also requires a party seeking default judgment to provide "a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought" and other documentation depending on the relief sought. Local Rule W.D. Wash. LCR 55(b)(2).

"Generally, default judgment is a two-step process: first, the court determines that a default judgment should be entered; then, it determines the amount and character of the relief that should be awarded." *Olson Kundig, Inc. v. 12th Ave. Iron, Inc.*, No. C22-0825JLR, 2023 WL 3269759, at *3 (W.D. Wash. May 5, 2023) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)). If the Court finds that Plaintiffs have established Defendant's liability, it must ensure that the amount of damages is reasonable and demonstrated by Plaintiffs' evidence. *See* Fed. R. Civ. P. 55(b)(2), LCR 55(b)(2).

### III.   ANALYSIS

**A.    The Court Has Personal and Subject Matter Jurisdiction.**

In deciding a default judgment motion, the Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  First, the Court possesses subject matter jurisdiction over this matter under 28 U.S.C. § 1331 because Plaintiffs assert federal claims under 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a). Dkt. No. 18 at 29–37.  The Court also has supplemental jurisdiction over Plaintiffs' Washington state law claims because they form part of the same controversy as the claims arising from federal trademark law.  28 U.S.C. § 1367.

Second, the Court has personal jurisdiction over Defendants because they consented to the forum selection clause in the BSA.  Dkt. No. 18 at 8, Dkt. No. 18-2 at 7 (noting that sellers submit to the jurisdiction of the "Governing Courts" identified in the BSA), 10 (identifying "Governing Courts" as the state or federal court in King County, Washington).  A forum selection clause can provide the sole basis for personal jurisdiction.  *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1406–07 (9th Cir. 1994); *Amazon.com Inc. v. Zhi*, No. 2:20-cv-01215-TMC-MLP, 2024 WL 943465, at *1 (W.D. Wash. Mar. 4, 2024) (finding that the BSA's forum selection clause adequately confers personal jurisdiction).

Even if Defendants did not agree to the forum selection clause, the Court has specific personal jurisdiction here.  "Specific jurisdiction exists when the suit arises out of or relates to the defendant's contacts with the forum." *Expensify, Inc. v. Swappoint AG*, No. 22-cv-05720-LB, 2023 WL 6323103, at *4 (N.D. Cal. Sept. 28, 2023).  Accepting Plaintiffs' allegations as true, the Trafficker Defendants "affirmatively undertook to do business with Amazon" and the Facilitator Defendants "affirmatively undertook to provide false or misleading documents to Amazon[.]" Dkt. No. 18 at 7–8.  In other words, Defendants "transacted business using a Washington state

company as its sales platform, reached out to do business with Washington residents through that platform, and sold counterfeit products to Washington residents[.]" *Amazon.com, Inc. v. Wong*, No. C19-0990JLR, 2024 WL 553695, at *2 (W.D. Wash. Feb. 12, 2024).  Moreover, "Plaintiffs' claims arose from these contacts with Washington state." *Id.*  Therefore, the Court has jurisdiction over this matter and the Defendants.

**B.    Voluntary Dismissal of False Advertising, Contributory False Advertising, Fraud, and Unjust Enrichment Claims**

Amazon and Kirby initially brought claims for false advertising, contributory false advertising,[4] fraud, and unjust enrichment.  Dkt. No. 18 at 30, 39, 35.  However, in their default judgment motion, Plaintiffs declined to move for judgment on these causes of action, and agreed to voluntarily dismiss these claims without prejudice.  Dkt. No. 47 at 16 n.5, 18 n.6, 21 n.7. Therefore, the Court grants Plaintiffs' request and dismisses these claims without prejudice.

**C.    Propriety of Default Judgment**

1.    First *Eitel* Factor

The first *Eitel* factor—whether Plaintiffs will be prejudiced without entry of default judgment—weighs in favor of granting Plaintiffs' motion because Plaintiffs have no other "recourse for recovery[.]" *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014).  Plaintiffs have attempted to litigate this case, and despite being properly served, Defendants have failed to appear or participate.  Therefore, "Plaintiffs will suffer prejudice because they will 'be denied the right to judicial resolution' of their claims and will be 'without other recourse for recovery.'" *Wong*, 2024 WL 553695, at *3.

---

[4] Amazon affirmatively dismissed its contributory false advertising claim.  Dkt. No. 47 at 18 n.6.  Kirby neither moved for default judgment on this claim, nor voluntarily dismissed it.  Given Kirby's silence on this issue, the Court will not analyze this claim under the *Eitel* factors and dismisses Kirby's contributory false advertising claim without prejudice.

1

2. <u>Second and Third *Eitel* Factors</u>

The second and third *Eitel* factors—the merits of the claims and sufficiency of the complaint—are often "analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *5 (D. Ariz. Mar. 27, 2020). "The merits of the plaintiff's substantive claim and the sufficiency of the complaint are often treated by courts as the most important *Eitel* factors." *Federal Nat. Mortg. Ass'n v. George*, No. EDCV 14-01679-VAP-SP, 2015 WL 4127958, at *3 (C.D. Cal. July 7, 2015).

In this case, the second and third *Eitel* factors favor entering default judgment on Plaintiffs' claims for trademark counterfeiting and infringement, contributory infringement, contributory false designation of origin, violations of the Washington Consumer Protection Act ("CPA"), and intentional interference with contractual relations.

### (a) *Trademark Counterfeiting and Infringement*

First, Kirby seeks default judgment against all Defendants for trademark counterfeiting and infringement violating the Lanham Act, 15 U.S.C. § 1114. Dkt. No. 18 at 29–30, Dkt. No. 47 at 14–16. To state a claim for trademark counterfeiting and infringement under the Lanham Act, Kirby must sufficiently allege that Defendants used

> (1) a reproduction, counterfeit, copy or colorable imitation of plaintiff's registered trademark, (2) without its consent, (3) in commerce, (4) in connection with the sale, offering for sale, distribution or advertising of any goods, (5) where such use is likely to cause confusion, or to cause a mistake or to deceive.

*Zhi*, 2024 WL 943465, at *3 (citing *Amazon v. Kurth*, No. C18-0353-RAJ, 2019 WL 3426064, at *2 (W.D. Wash. July 30, 2019) and 15 U.S.C. § 1114(1)(2)). The Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. "Because counterfeit marks are, by design, 'inherently

confusing,' if the plaintiff presents evidence demonstrating an allegedly infringing mark is counterfeit, then a strong likelihood of confusion is established[.]" *Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631-MJP, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013) (internal citation omitted).

Kirby has stated a plausible claim for trademark counterfeiting and infringement. Kirby owns the trademarks at issue. Dkt. No. 18 at 12–13, Dkt. No. 18-1 (Kirby's registered trademarks), Dkt. No. 50-1 (same). Kirby test-purchased the accused products from Defendants' selling accounts, reviewed the product images, and reviewed the product samples that Defendants shipped to Amazon. Dkt. No. 18 at 17–21, Dkt. No. 50 at 4. Based on its review, Kirby concluded that these products were colorable imitations of Kirby-branded products that were produced without Kirby's consent. Dkt. No. 50 at 4 (attesting that the accused products were counterfeit because they displayed distinctive graphics errors, had missing or incorrect label information, and had substandard finish quality), Dkt. No. 18 at 16–17. Defendants sold the unauthorized products through the Facilitator Defendants' website and on the Amazon storefront. Dkt. No. 50 at 3–4, Dkt. No. 48 at 3–4, Dkt. No. 18 at 27–28. In doing so, Defendants shipped these products interstate. Dkt. No. 18 at 31. Kirby alleges that Defendants intended to confuse and deceive customers into believing that Defendants provided goods that were approved by or affiliated with Kirby. *Id.* at 30, Dkt. No. 50 at 4.

Accepting these allegations as true, as the Court must, it is likely that a reasonable consumer would have been deceived by Defendants and confused the accused products with genuine Kirby merchandise. *DIRECTV, Inc.*, 503 F.3d at 854; *see also Zhi*, 2024 WL 943465, at *3; *Wong*, 2024 WL 553695, at *4; *Dong*, 2024 WL 775900, at *4. The second and third *Eitel* factors therefore weigh in favor of default judgment on Kirby's claim against Defendants for trademark counterfeiting and infringement in violation of 15 U.S.C. § 1114.

*(b) False Designation of Origin*

Both Amazon and Kirby assert claims for false designation of origin. Kirby asserts this claim against all Defendants; Amazon asserts the claim only against the Trafficker Defendants. Dkt. No. 18 at 30–33. A false designation of origin claim requires a plaintiff to adequately plead that Defendants "(1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015) (citing *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902–04 (9th Cir. 2007)). Ownership of the infringed trademarks is not required to establish a false designation of origin claim, as long as the plaintiff can "show economic or reputational injury flowing directly from the deception wrought by defendant's advertising." *Zhi*, 2024 WL 943465, at *3.

Kirby alleges that Defendants sold counterfeit Kirby-branded merchandise in the Amazon storefront, and offered those same products for sale through the Facilitator Defendants' website. Dkt. No. 18 at 16–20, 27–28, 30. Kirby claims that this misuse of the Kirby trademarks deceived customers into believing Defendants' products were authentic. *Id.* at 29–30. According to Kirby, Defendants' conduct undermined Kirby's ability to "safeguard its brand goodwill and reputation for quality and excellence." Dkt. No. 47 at 17. Kirby allegedly suffered irreparable injury as a result. Dkt. No. 18 at 29.

Similarly, Amazon avers that Trafficker Defendants deceived Amazon about the accused products' authenticity and willfully violated the BSA and Amazon's Anti-Counterfeiting Policies. In particular, the BSA requires sellers to represent and warrant that they "will comply with all applicable Laws in [the] performance of its obligations and exercise of its rights' under the BSA." Dkt. No. 18-2 at 4. The BSA also incorporates Amazon's Anti-Counterfeiting Policies, and

prohibits the sale of counterfeit goods.  Dkt. No. 18-2 at 3, 10; Dkt. No. 18-3 at 2–3.  Amazon alleges that the Trafficker Defendants agreed to the BSA and incorporated Anti-Counterfeiting Policies, and then flouted these agreements and policies.  Dkt. No. 18 at 3, 13–16.  Amazon relied on the Trafficker Defendants' misrepresentation in allowing them to sell through the Amazon Storefront.  *Id.* at 29.  Amazon contends that the Trafficker Defendants' deceptive conduct "jeopardized the trust that customers place in Kirby, the Amazon Store, and the Amazon brand[.]" Dkt. No. 47 at 17.  Amazon alleges that the Trafficker Defendants therefore irreparably injured Amazon's reputation and brand.  Dkt. No. 18 at 29.

Taking the complaint's allegations as true, both Plaintiffs have successfully stated claims for false designation of origin.  Kirby adequately alleges that Defendants misrepresented the authenticity of the accused products, thus misdirecting purchases and affecting Kirby's sales either through the Amazon storefront or Defendants' website.  Dkt. No. 50 at 4 (attesting that Defendants "diverted legitimate sales that would have otherwise been made by Kirby").  Kirby's reputation and goodwill is also plausibly injured by differences in the quality of Defendants' customer service and products.  *Id.* (stating Defendants' conduct harms Kirby's reputation and undermines customer goodwill because customers could "associate the inferior [counterfeit] products with Kirby and cease purchasing Kirby products in the future").  Likewise, while not an owner of the Kirby trademarks, Amazon sufficiently alleges that by agreeing to and then breaching the BSA, Defendants deceived Amazon into allowing counterfeit products on its platform, thus leading to loss of consumer goodwill and potential financial harm.  Dkt. No. 49 at 6 (describing "tarnish[ to] Amazon's brand and reputation" and financial cost from investigating and combating Defendants' deceptive acts).

Therefore, the Court concludes that both Kirby and Amazon have plausibly stated claims for false designation of origin. The second and third *Eitel* factors weigh in favor of entering default judgment on these claims.

### (c) Contributory Trademark Infringement and Contributory False Designation of Origin

Kirby asserts claims for contributory trademark infringement and contributory false designation of origin against the Facilitator Defendants. Dkt. No. 18 at 33. Amazon asserts only contributory false designation of origin claims against the same defendants. *Id.* at 35.

To establish contributory trademark infringement, Kirby must show that the Facilitator Defendants "(1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007). When an alleged contributory infringer "supplies a service rather than a product, under the second prong of this test, the court must 'consider the extent of control exercised by the defendant over the third party's means of infringement.'" *Id.* (quoting *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 984 (9th Cir. 1999)); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 931–43 (9th Cir. 2011).

Kirby alleges that Facilitator Defendants operate interrelated businesses that offered services designed to circumvent Amazon's product authentication processes. Dkt. No. 18 at 21. Kirby claims that after identifying Facilitator Defendants' websites, Plaintiffs used an external vendor to place a test order for fake authentication documentation. *Id.* at 22. One of Facilitator Defendants' operators "instructed the vendor via WhatsApp to add a certain email address … to their selling account so that [Facilitator Defendants] could access the selling account and submit product authentication documents on the seller's behalf to Amazon." *Id.* Kirby further alleges

that Facilitator Defendants used these businesses to produce fake invoices for Trafficker Defendants' selling accounts. *Id.* at 26. Accepting Kirby's allegations as true, it has sufficiently stated a claim for contributory infringement by pleading that Facilitator Defendants encouraged and assisted Trafficker Defendants' sale of counterfeit Kirby merchandise on Amazon, and that Facilitator Defendants had direct control over the means of infringement (*i.e.*, fraudulent selling accounts and fake invoices). *See SAS v. Sawabeh Info. Servs. Co.*, No. CV 11-4147 GAF (MANx), 2013 WL 12126742, at *7 (C.D. Cal. Oct. 8, 2013) (granting summary judgment to plaintiffs on a contributory counterfeiting claim where defendants had direct control over the website platform used to facilitate counterfeit goods sales); *Amazon.com, Inc. v. Li Xinjuan*, No. C22-840 MJP, 2024 WL 4201975, at *4 (W.D. Wash. Sept. 16, 2024) (entering default judgment on claim for contributory infringement where defendant operated at least two of the fraudulent Amazon selling accounts). As such, the second and third *Eitel* factors favor entering default judgment on Kirby's claim for contributory trademark infringement.

Similarly, the Court finds that Plaintiffs have sufficiently stated a claim for contributory false designation of origin. Again, Plaintiffs must sufficiently allege that Facilitator Defendants intentionally induced the primary Lanham Act violation, or continued to supply the counterfeit product with knowledge that the Trafficker Defendants continued to mislabel the particular product supplied. *AK Futures LLC v. LCF Labs Inc.*, No. 8:21-cv-02121-JVS-ADS, 2022 WL 17883832, at *6 (C.D. Cal. Dec. 7, 2022). Because Facilitator Defendants purportedly provided services rather than actual counterfeit goods, the Court considers whether they held direct control over the means of infringement. *Lockheed*, 194 F.3d at 984. Here, Plaintiffs sufficiently allege that (1) Facilitator Defendants knowingly encouraged and assisted with the mislabeling of Kirby products and (2) that Facilitator Defendants held direct control over the means of false designation

via the selling accounts and false documents.  As such, the second and third *Eitel* factors favor default judgment on Plaintiffs' claims for contributory false designation of origin.

### (d)  Washington Consumer Protection Act

Plaintiffs allege that Defendants violated the CPA by advertising, marketing, selling, and distributing Kirby products.  Dkt. No. 18 at 38.  Courts consider CPA claims to be "substantially congruous" to federal claims under the Lanham Act.  *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, No. C18-1011 RSM, 2020 WL 758070, at *2 (W.D. Wash. Feb. 14, 2020) (citing *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010)).  To prevail on their CPA claim, they must show "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting public interest, (4) injury in the plaintiff's business or property, and (5) a causal link between the unfair acts and injury suffered."  *Safeworks*, 717 F. Supp. 2d at 1192 (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986)).  The analysis of a CPA claim—like that of trademark infringement—"will turn on the likelihood of confusion regarding a protectable mark."  *Id.*  The elements to establish likelihood of confusion under Washington law is the same as for federal trademark infringement.  *Id.* (citing *eAcceleration Corp. v. Trend Micro, Inc.*, 408 F. Supp. 2d 1110, 1114 (W.D. Wash. 2006)).  That is, Plaintiffs must show that a trademark exists, and that Defendants improperly used Plaintiffs' mark in a way likely to cause consumer confusion.  *eAcceleration*, 408 F. Supp. 2d at 1114.

Because the Court finds that Kirby has met the similar requirements under the Lanham Act for trademark counterfeiting and infringement, the Court concludes that Kirby has also sufficiently alleged claims under the Washington CPA.  In other words, Kirby plausibly alleges that Defendants' trademark infringement constitutes an "unfair or deceptive act" under the CPA, which caused financial and reputational damage to Plaintiffs' businesses.  *BBC*, 2020 WL 758070, at *2. Absent "unusual and unforeseen circumstances," trademark infringement typically affects the

public interest under Washington law. *Seattle Endeavors, Inc. v. Mastro*, 868 P.2d 120, 127 (Wash. 1994); *Nat'l Prods., Inc. v. Arkon Res., Inc.*, 773 F. App'x 377, 379 (9th Cir. 2019). And lastly, Defendants' business allegedly operated across state lines, thus satisfying the "in trade or commerce" element. *BBC*, 2020 WL 758070, at *3. As such, the second and third *Eitel* factors weigh in favor of entering default judgment on Plaintiffs' Washington CPA claims.

### (e) Intentional Interference with Contractual Relations

Amazon asserts a claim for intentional interference with contractual relations against the Facilitator Defendants. Dkt. No. 18 at 38. To prevail, Amazon must show: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination thereof; (4) resultant damage." *Cherberg v. Peoples Nat. Bank of Washington*, 564 P.2d 1137, 1142 (Wash. 1977).

Amazon has adequately alleged a claim for intentional interference with contractual relations. Amazon plausibly alleges that the Facilitator Defendants intentionally interfered with the BSA's restrictions by offering services that circumvent Amazon's product authentication processes (*e.g.*, producing fake invoices and removing counterfeit inventory). Dkt. No. 18 at 17, 26–27. According to Amazon, it suffered reputational and financial damages from the scheme. As such, the Court finds that the second and third *Eitel* factors weigh in favor of default judgment on this claim.

### 3. Fourth *Eitel* Factor

Under the fourth factor, the Court considers whether the recovery sought is proportional to the harm caused by Defendants' conduct. *Curtis*, 33 F. Supp. 3d at 1211. "Where there is willful use of a counterfeit mark, courts may award statutory damages between $1,000 and no more than $2,000,000 per trademark affected." *Zhi*, 2024 WL 943465, at *5 (citing 15 U.S.C. §§ 1117(c)(1)–

(2)).  Here, Kirby alleges 10 impacted trademarks (Dkt. No. 18 at 12–13), and seeks statutory damages totaling $196,686 based on Defendants' violations of the Lanham Act—which is within the statutory damages range of $1,000 and $20,000,000 for 10 marks.  Dkt. No. 47 at 29.  Plaintiffs also submit evidence showing that based on Amazon's sale records, Defendants sold $62,562 in counterfeit Kirby-branded products.  Dkt. No. 49 at 5.  Given the seriousness of Defendants' alleged conduct and the harm to Plaintiffs, the Court finds Kirby's requested statutory damages to be reasonable.  The fourth *Eitel* factor thus weighs in favor of default judgment.

### 4. Fifth *Eitel* Factor

The fifth *Eitel* factor—whether a genuine issue of material fact exists—also weighs in favor of granting Plaintiffs' motion.  Again, in deciding a default judgment, the Court must take well-pleaded factual allegations as true.  *DIRECTV, Inc.*, 503 F.3d at 854.  Plaintiffs properly served Defendants with the summons and complaint, and Defendants are in default.  Therefore, the likelihood of dispute over material facts is slight.

### 5. Sixth *Eitel* Factor

Under the sixth *Eitel* factor, the Court considers whether Defendants' failure to respond was due to excusable neglect.  Considering Plaintiffs' proper notice of this action, the record does not suggest that Defendants' absence in this case was based on excusable neglect.  *See Getty Images (US), Inc. v. Virtual Clinics*, No. C13-0626JLR, 2014 WL 358412, at *5 (W.D. Wash. Jan. 31, 2014) ("In the default judgment context, there is no excusable neglect where a defendant is 'properly served with the Complaint, the notice of entry of default, [and] the papers in support of the [default judgment] motion.'" (cleaned up)).  Therefore, this factor supports default judgment.

### 6. Seventh *Eitel* Factor

The seventh *Eitel* factor requires the Court to consider whether default judgment is appropriate in light of the general principle that cases should be decided on their merits.  This

policy "will almost always disfavor the entry of default judgment." *Vawter v. Quality Loan Serv. Corp. of Washington*, No. C09-1585JLR, 2011 WL 1584424, at *3 (W.D. Wash. Apr. 27, 2011). However, on balance, the other factors discussed outweigh this single factor disfavoring default judgment, and default judgment is not precluded based on this policy favoring decision on the merits. *See Empl. Painters' Trust v. Dahl Constr. Servs., Inc.*, No. C19-1541-RSM, 2020 WL 3639591, at *4 (W.D. Wash. July 6, 2020) (finding "that in instances where a defendant's failure to appear makes a decision on the merits 'impractical, if not impossible,' any preference for deciding cases on the merits 'does not preclude a court from granting default judgment'").

In sum, default judgment should be entered on Plaintiffs' claims for trademark infringement and counterfeiting, false designation of origin, contributory infringement, contributory false designation of origin, violations of the Washington CPA, and intentional interference with contractual relations.

**D.    Relief Sought**

1.    <u>Statutory damages</u>

Kirby seeks $196,686 in statutory damages against Defendants.[5]  Kirby argues that this amount represents the low end of damages available for Defendants' conduct, but will deter against future counterfeiting.  Dkt. No. 47 at 29.  To support its request, Kirby provides declarations attesting to the revenue from fraudulent sales.  Dkt. No. 49 at 5, *see also* Dkt. No. 48 at 2–3 (attesting to association of individual Defendants with each selling account).  The total sought is

---

[5] This amount includes damages against the My King Line selling account operators (Defendants Parkhomenko and Zhukau) totaling $2,868; the Vas10maT selling account operators (Defendants Parkhomenko, Zhukau, and O. Shkarupa) totaling $53,766; the XfanStore selling account operators (Defendants Parkhomenko, Zhukau, O. Shkarupa, and I. Shkarupa) totaling $67,737; the NelliS selling account operators (Defendants Zhukau, O. Shkarupa, and Sandrak) totaling $19,536; the BurBurBur selling account operators (Defendants Zhukau and I. Shkarupa) totaling $32,079; the AliteStore selling account (Defendants Zhukau and O. Shkarupa) totaling $14,889; the Galmakov selling account operators (Defendants Zhukau and Sandrak) totaling $5,811.  Dkt. No. 47 at 26–29.  Plaintiffs argue that Defendants, including the Facilitator Defendants, should be held jointly and severally liable for the statutory damages from each selling account.  *Id.* at 29.

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION - 17

treble the wrongfully derived revenue, which is similar to other relief awarded in similar cases in this district. *See, e.g., Zhi*, 2024 WL 943465, at *5; *Wong*, 2024 WL 553695, at *7; *Dong*, 2024 WL 775900, at *7–8; *Amazon.com, Inc. v. Peng*, No. 2:23-cv-00607-TL, 2024 WL 4722141, at *10 (W.D. Wash. Nov. 8, 2024).

Kirby's request for statutory damages against Defendants is appropriate. Defendants engaged in a willful and coordinated scheme to sell counterfeit Kirby products on the Amazon storefront, leading to financial and reputational damages to Plaintiffs. Given the number of trademarks at issue, Kirby's request falls below the permissible amount under the Lanham Act, but is proportional to its actual damages. And as noted above, in similar cases, several courts in this district have awarded damages three times the aggregate sale of counterfeit products. Therefore, the Court awards Kirby $196,686 in statutory damages.

2. <u>Permanent Injunction</u>

Plaintiffs request the Court permanently enjoin Defendants from:

    a) using any indication of Kirby's brand in connection with any product, service, or website;

    b) offering, marketing, advertising, distributing, or selling any service designed to submit falsified documentation on behalf of sellers or otherwise circumvent Amazon's processes for seller approval and product authentication;

    c) selling counterfeit or infringing products in Amazon's stores;

    d) selling counterfeit or infringing products to Amazon or any Amazon affiliate;

    e) importing, manufacturing, producing, distributing, circulating, offering to sell, selling, promoting, or displaying any product or service using any simulation, reproduction, counterfeit, copy, or colorable imitation of Kirby's brand or Trademarks, or which otherwise infringes Kirby's intellectual property, in any store or in any medium; and

    f) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (e) above.

Dkt. No. 47 at 30, Dkt. No. 18 at 40. Under the Lanham Act, the court may "grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent

the violation of any right" of the trademark owner. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006). The Washington CPA likewise allows courts to "enjoin further violations[.]" WASH. REV. CODE § 19.86.090. In deciding whether permanent injunctive relief is appropriate in a trademark infringement case, courts apply "traditional equitable principles[.]" *Reno Air Racing*, 452 F.3d at 1137. A plaintiff seeking a permanent injunction must demonstrate

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 1137 n.11. The Court considers each equitable factor in turn.

First, under the Lanham Act, Plaintiffs are entitled to "a rebuttable presumption of irreparable harm upon a finding of a violation[.]" 15 U.S.C. § 1116(a). Given their default, Defendants have not properly rebutted Plaintiffs' allegations of irreparable harm, which the Court accepts as true.

Second, the remedies available at law are inadequate here because Plaintiffs sufficiently allege that Defendants' conduct injured their brand reputation and customer goodwill. As other courts in the Ninth Circuit have concluded, lost customer goodwill and tarnished reputations cannot be remedied by a monetary award. *See, e.g.*, *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); *Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874, 888 (C.D. Cal. 2020), *aff'd sub nom. Beyond Blond Prods., LLC v. ComedyMX, LLC*, No. 21-55990, 2022 WL 1101756 (9th Cir. Apr. 13, 2022); *Zero Cloud One Intelligent Tech. (Hangzhou) Co. v. Flying Heliball LLC*, No. 2:24-cv-01699-JNW, 2024 WL 4665594, at *7 (W.D. Wash. Nov. 4, 2024). The Court also agrees with Plaintiffs that

given Defendants' non-participation in this suit, Defendants will likely continue the wrongful conduct.

Third, the balance of hardships supports Plaintiffs' request for a permanent injunction. Again, absent injunctive relief, Defendants could continue to counterfeit Kirby products and sell these products on Amazon's platform, thus resulting in continued harm to Plaintiffs. Moreover, because Defendants "would suffer no injury other than refraining from her infringing conduct[,]" Plaintiffs' hardships outweigh potential harm to Defendants. *Eve Nev., LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at \*9 (W.D. Wash. Jan. 31, 2022).

Finally, "injunctive relief serves the public interest by protecting the rights of trademark holders against infringement and also minimizing consumer confusion." *Treemo, Inc. v. Flipboard, Inc.*, 53 F. Supp. 3d 1342, 1368 (W.D. Wash. 2014). The fourth factor supports entry of a permanent injunction.

Thus, the Court permanently enjoins Defendants on the requested terms.

## IV.   CONCLUSION

The Court GRANTS Plaintiffs' Motion for Default Judgment and Permanent Injunction. Dkt. No. 47.

Per Plaintiffs' request, the Court DISMISSES without prejudice Plaintiffs' claims for false advertising, contributory false advertising, fraud, and unjust enrichment.

The Court AWARDS Plaintiff Kirby statutory damages totaling $196,686 as follows:

    a) An award of $2,868 in statutory damages against Defendants Parkhomenko, Zhukau, Shauchenka, Amasales, and Bauble, jointly and severally, for counterfeit sales from the My King Line selling account;

b) An award of $53,766 in statutory damages against Defendants Parkhomenko, Zhukau, O. Shkarupa, Shauchenka, Amasales, and Bauble, jointly and severally, for counterfeit sales from the Vas10maT selling account;

c) An award of $67,737 in statutory damages against Defendants Parkhomenko, Zhukau, O. Shkarupa, I. Shkarupa, Shauchenka, Amasales, and Bauble, jointly and severally, for counterfeit sales from the XfanStore selling account;

d) An award of $19,536 in statutory damages against Defendants Zhukau, O. Shkarupa, Sandrak, Shauchenka, Amasales, and Bauble, jointly and severally, for counterfeit sales from the NelliS selling account;

e) An award of $32,079 in statutory damages against Zhukau, I. Shkarupa, Shauchenka, Amasales, and Bauble, jointly and severally, for counterfeit sales from the BurBurBur selling account;

f) An award of $14,889 in statutory damages against Zhukau, O. Shkarupa, Shauchenka, Amasales, and Bauble, jointly and severally, for counterfeit sales from the AliteStore selling account; and

g) An award of $5,811 in statutory damages against Zhukau, Sandrak, Shauchenka, Amasales, and Bauble, jointly and severally, for counterfeit sales from the Galmakov selling account.

Defendants and their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of the order, are hereby permanently ENJOINED AND RESTRAINED from:

a) using any indication of Kirby's brand in connection with any product, service, or website;

b) offering, marketing, advertising, distributing, or selling any service designed to submit falsified documentation on behalf of sellers or otherwise circumvent Amazon's processes for seller approval and product authentication;

c) selling counterfeit or infringing products in Amazon's stores;

d) selling counterfeit or infringing products to Amazon or any Amazon affiliate;

e) importing, manufacturing, producing, distributing, circulating, offering to sell, selling, promoting, or displaying any product or service using any simulation, reproduction, counterfeit, copy, or colorable imitation of Kirby's brand or trademarks, or which otherwise infringes Kirby's intellectual property, in any store or in any medium; and

f) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (e) above.

The Court DIRECTS Plaintiffs' counsel to provide notice of this order and injunction on Defendants via email service, as approved by the Court in its prior order. Dkt. No. 37. The Court directs the clerk to administratively close this case.


Dated this 3rd day of July, 2025.


Kymberly K. Evanson
United States District Judge